Salvatore T. De Matteo, J.
This is an action initiated hy the plaintiff, a foreign corporation allegedly licensed to do business in this jurisdiction, to recover the sum of $2,216.40 from the defendant based upon a series of dinette sales in 1969.
The: defendant admits these transactions, but contends that the plaintiff corporation may not maintain this action because it has failed to comply with subdivision (a) of section 1312 of the Business Corporation Law, which reads as followsA foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and has paid to the state all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this state without authority. This prohibition shall apply to any successor in interest of such foreign corporation,.” (Italics supplied.)
At the trial, the plaintiff produced one of its principals who testified that at the time of the sale the corporation was licensed *103 to do business in New York and adduced as well a general bedding license issued by the New York Secretary of State. This license granted the plaintiff the right to engage in the wholesale and retail sale of bedding. Furthermore, it contends that it is currently permitted to conduct business here by virtue of its merger into the National Service Industries, Inc., admittedly a licensed foreign corporation.
In rebuttal, defendant introduced into evidence a search from the official records of the New York Secretary of State which revealed that neither Dixie Dinettes, Inc. nor Superior Furniture, Inc. (sellers) was ever licensed. Such official records also revealed that the National Service Industries, Inc. had complied with subdivision (a) of section 1312 as of December 31,1970, but not at the time of the sale.
Not every instance of business transactions in the State requires the procurement of a certificate of authority in accord with the above section. The corporate activities must be more than casual or occasional and must be so systematic and regular as to manifest continuity of activity in this jurisdiction in order to require compliance with subdivison (a) of section 1312 of the Business Corporation Law. (Penn Collieries Co. v. McKeever, 183 N. Y. 98.) However, once a corporation is found to be doing business in this State it must comply with subdivision (a) of section 1312. The purpose of this requirement is to protect domestic corporations from unfair competition and to place them on an equal footing with corporations who are using the facilities provided by the State of New York in the conduct of their business. (Bonnell Co. v. Katz, 23 Misc 2d 1028.)
The Legislature has penalized noncompliance by foreign corporations by denying them recourse to the courts of this State to enforce their rights or redress their grievances. In a word, these corporations have no standing to sue until they have complied with these regulations.
In the case at bar, we must determine whether the plaintiff admittedly doing business here, may maintain this present action. Under the section under consideration, there is a presumption that a foreign corporation is qualified to do business here and to litigate in our courts. (Dari-Delite v. Priest & Baker, 50 Misc 2d 654.)
Furthermore, where the defendant seeks to impugn the plaintiff’s capacity to sue, the burden of proof is placed upon him to establish such defense with appropriate proof. (See Ascher Corp. v. Horvath, 35 Misc 2d 375.)
*104 In this matter, we have been sitting without a jury and, therefore, we are empowered to act as both the trier of facts as well as the judge of the law. In this dual capacity this court has been able to evaluate the evidence adduced and to observe the demeanor of the witnesses. Based upon these observations, it is our conclusion the defendant has overcome the presumption in favor of the plaintiff by the introduction of the search conducted by the Secretary of State which shows that the plaintiff is not licensed to do business here. We must place great reliance on this examination since the Secretary of State is the official in charge of maintaining such records and has no motive to distort the truth. The impartiality of such documentation is unimpeachable. Furthermore, the general bedding license, as the name indicates, has no relevance to the sale of kitchen or dinette equipment, but is limited to the sale of bedding or things incidental thereto.
Hence, the burden of going forth with the evidence has. now shifted to the plaintiff. There is , of course, no legal obligation for it to introduce rebuttal evidence. However, such failure to do so may bring dire consequences to its present position.
It is our belief that plaintiff has faithfully carried out and adhered to the business agreement entered into between the parties. However, the defendant is also entitled to know whether the plaintiff has paid its franchise taxes, fees, and penalties pursuant to subdivision (a) of section 1312 of the Business Corporation Law, covering the period during which the controverted transaction took place. Our examination of the authorities revealed no reported cases which relieve a foreign corporation, doing business here, from the inaccessibility to our courts without proof of payment of such taxes, fees, et cetera even though that corporation has made delivery of the goods to the.defendant and may be otherwise entitled to recover. (See Plasticrete Corp. v. Nuovo Corp., 59 Misc 2d 1097.)
Hence, it is our reluctant task to request the receipts which will indicate whether the plaintiff has paid the requisite fees, et cetera so as to prove that the Secretary of State has committed an error.
The1 plain language of the statute and the judicial interpretation thereof clearly established that the underlying contract is not void, but merely the right to enforce it is suspended while the offending corporation is in the state of noncompliance with the requirements imposed upon it. (See Dunbarton Flax Spinning Co. v. Greenwich & J. Ry. Co., 83 N. Y. S. 1054.)
*105 Hence, although the corporation has failed to properly comply with the provisions of subdivision (a) of section 1312 of the Business Corporation Law at the time of the controverted transaction, in this instance 1969, it may erase this oversight by a late payment of the requisite taxes, et cetera as well as current ones and thereby gain the capacity to sue. (See Oxford Paper Co. v. S. N. Liquidation Co., 45 Misc 2d 612.)
The plaintiff further contends that it may maintain this action in accord with CPLB. 8501 despite the prohibition of subdivision (a) of section 1312 of the Business Corporation Law. CPLB 8501 (subd. [a]) reads in part as follows: “Except where the plaintiff has been granted permission to proceed as a poor person * * * the court * * * shall order security for costs to be given by the plaintiffs where none of them is a domestic corporation, [or] a foreign corporation licensed to do business in the state.” It is the plaintiff’s thesis that by the mere payment of such token costs it can circumvent the Legislature’s intent embodied in the Business Corporation Law. The basic function of CPLB 8501 (subd. [a]) is to assure that a successful defendant will be able to recover his statutory costs, to protect certain classes of litigants from irresponsible conduct of others, and to discourage the commencement of lawsuits designed to harass rather than to redress a wrong.
It would appear that this section comes into play when a foreign corporation, which has not conducted a systematic transaction of business here, desires to bring an action in this State. Under these circumstances, the defendant is permitted to require the plaintiff to put up security for costs. However, when a corporation is engaged in such activity as requires compliance with subdivision (a) of section 1312 of the Business Corporation Law, it may not avoid it by the mere posting of costs. Conversely, a foreign corporation duly licensed does not have to post security for costs. By this interpretation we may reconcile any superficial inconsistencies between these statutory provisions. It is clear that the Legislature intended to permit foreign corporations to do business in this jurisdiction only on the payment of franchise taxes and other fees and to penalize their failure by denying them access to our courts. Otherwise, a foreign corporation, instead of complying with subdivision (a) of section 1312 of the Business Corporation Law, would merely put up a rather small bond when it intended to initiate litigation in this State and thereby avoid the payment of the heavy franchise taxes normally paid by domestic and licensed foreign corporations.
*106 In sum, we feel that the plaintiff is not in a position to continue this action and must reluctantly dismiss it hut without prejudice. We would advise it to renew this action when it can establish the required compliance of subdivision (a) of section 1312 either through the production of receipted bills covering the year 1969 through the present or by paying any arrears that might be outstanding for such period. The seller’s contention that its merger into National Service Industries, Inc. will relieve it from the obligations imposed by the Business Corporation Law is not tenable. The statute clearly imposes these requirements on successors in interest of defaulting corporations. The report of1 the Secretary of State indicates that National Service Industries, Inc., the successor of Dixie Dinettes, Inc., qualified to do business in this jurisdiction as of December 31, 1970 and not at the time of the disputed sale. Furthermore, the merger of a noncomplying corporation into one duly licensed here will not relieve the former of its disability, unless the delinquent taxes have also been paid.