**Frederick B. AYER, Defendant and Third-Party Plaintiff,**

v.

**GENERAL DYNAMICS CORP., Third-Party Defendant.**

**No. 75 Civ. 3318.**

United States District Court, S. D. New York.

April 4, 1979.

Joseph I. Kazarnovsky, Morton L. Ginsberg, New York City, for defendant and third-party plaintiff.

Barry R. Ostrager, Thomas D. Warren, Martin V. Schwartz, Simpson Thacher & Bartlett, New York City, for third-party defendant.

PIERCE, District Judge.

## OPINION AND ORDER

Third-party defendant General Dynamics brings this motion to dismiss for failure to state a claim and for failure to join an indispensable party. In response, third-party plaintiff Frederick B. Ayer moves to join additional third-party plaintiffs.

### FACTS

Third-party plaintiff Frederick B. Ayer is the president and controlling shareholder of three corporations, Aerospace Leasing Corp. ("Leasing"), Aerospace Trading Corp. ("Trading"),[1] and Frederick B. Ayer and Associates, Inc. ("Associates"). Leasing and Trading are Panamanian corporations with their principal places of business in Panama, while Associates has its principal place of business in New York. Third-party defendant General Dynamics is a Delaware corporation with its principal place of business in Missouri.

General Dynamics is the manufacturer and mortgagee of two commercial aircraft, one of which was sold to Trading and the other to Leasing. Marine Midland Bank, plaintiff in the main action herein, held a first mortgage on one of the planes. Trading and Leasing, in turn, leased the aircraft to Aerolineas Perucinas, S.A. ("APSA"), a now defunct Peruvian airline company which used the aircraft for approximately seven years prior to bankruptcy in 1971. During those seven years, Ayer and General Dynamics negotiated several modifications of their original agreements. One of these was in 1970 and was a joint venture to finance a "Fly Now, Pay Later" plan under which passengers would pay with promissory notes which General Dynamics agreed to collect. The default of APSA in 1971 apparently caused cash flow problems for Trading, Leasing and Associates. Two additional agreements were reached between Ayer and General Dynamics whereby (1) General Dynamics agreed not to invoke a default upon a separate Associates' note it held but would seek payment out of the ultimate proceeds of the two planes, and (2) Ayer and General Dynamics agreed to sell or lease both aircraft with resulting proceeds, after payment to Marine Midland Bank, to be distributed equally between them.

### HISTORY OF LITIGATION

In December 1974, Marine Midland Bank commenced an action in New York State Supreme Court against Ayer to enforce his personal guarantee relating to the mortgage held on one of the planes. In July 1975, Ayer brought a third-party complaint against General Dynamics essentially seeking indemnity. General Dynamics counterclaimed and removed the action to this Court based on diversity jurisdiction.

By opinion and order dated February 13, 1976, this Court denied Ayer's motion to join Trading and Leasing as additional third-party plaintiffs in the action against

---

1. Formerly, Universal Leasing Corp. and Universal Trading Corp. Ayer claims that the names were changed to "Aerospace" so that Leasing and Trading could obtain certificates of authority since the prior names conflicted with pre-existing New York corporate names.

General Dynamics. The basis for that determination was the finding that Trading and Leasing were foreign corporations doing business in New York State without certificate of authority and without having paid any fees, penalties or franchise taxes to the state. The denial was without prejudice to renewal upon a showing that the corporations had obtained certificates of authority.

On November 11, 1977, plaintiff Marine Midland Bank's action against Ayer was dismissed without prejudice. Upon stipulation by the parties, the third-party action was severed and continued as a separate action. General Dynamics then moved to dismiss and Ayer renewed his motion to join. Pursuant to 28 U.S.C. § 636(b)(1)(B) (1976), the motions were referred to Magistrate Leonard Bernikow who recommended that the motion to join be granted and that the motion to dismiss be denied. For reasons that follow, the Court adopts the Magistrate's report and recommendations in their entirety.

## DISCUSSION

### Motion to Join

■ New York Business Corporation Law § 1312(a) (McKinney 1963) provides: "A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees, penalties and franchise taxes for the years or parts thereof during which it did business in the state without authority. This prohibition shall apply to any successor in interest of such foreign corporation."

Trading and Leasing now present certificates of authority to do business in New York, obtained from the New York Secretary of State, and also consents by the New York State Tax Commission to their applications for authority, as provided in New York Business Corporation Law § 1304 (a)(7).[2]

However, General Dynamics opposes Ayer's motion to join on the ground that no fees, penalties or franchise taxes have yet been paid to the state by either Trading or Leasing, as required by BCL § 1312(a). General Dynamics claims that since the Court's opinion of February 13, 1976 found Trading and Leasing to be doing business in New York for several years, Trading and Leasing should pay the fees and taxes for those years before they can be joined. The parties have stipulated that Trading and Leasing have not paid any fees, penalties or taxes to the State of New York for any year or years prior to 1977. However, it is also conceded by General Dynamics that no such taxes have yet been assessed.[3] General Dynamics contends that the consents of the Tax Commission are insufficient to erase the obligation imposed on Trading and Leasing by the plain language of BCL § 1312(a) of paying all back taxes before they may sue in New York.

---

**2.** New York Business Corporation Law § 1304 sets forth the required contents of an application for authority to do business in New York. BCL § 1304(a)(7) (McKinney 1963) provides that the application must include:

"A statement that the foreign corporation has not since its date of incorporation or since the date its authority to do business in this state was last surrendered, engaged in any activity in this state, except as set forth in paragraph (b) of Section 1301 (Authorization of foreign corporations), or in lieu thereof the consent of the state tax commission to the filing of the application, which consent shall be attached thereto."

Subsection (7) was apparently added to aid the state in its collection of franchise taxes. 5

White on New York Corporations ¶ 1304.01, at 13–18 n.7 (13th ed. 1977).

**3.** General Dynamics contends that such taxes will be assessed. Ayer counters that he has asked the State Tax Commission to waive all taxes. A delinquency notice was mailed to Trading and Leasing for failure to file tax returns but Ayer claims that this was a "pro-forma notice sent out by a computer that had not been informed of our filing" of a waiver request. The Court notes, as did the Magistrate in his report, even if taxes are later assessed against Trading and Leasing, the Court need not dismiss the action if the fees and taxes are then paid. *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1324 (2d Cir. 1977).

The closest case on point appears to be *Federal Steel Corp. v. Mitsubishi International Corp.*, 175 N.Y.L.J. 8, col. 2 (Sup.Ct. March 29, 1976), *aff'd on other grounds,* 61 A.D.2d 781, 402 N.Y.S.2d 783 (1st Dep't 1977) (not otherwise reported). The New York court stated:

"The defendant continues to urge on authority of *Dixie Dinettes, Inc. v. Schaller's Furniture,* 71 Misc.2d 102, 335 N.Y. S.2d 632 . . . that in the absence of actual proof of payment of taxes, fees, and penalties, the action may not be maintained. These cases are distinguishable because here the State Tax Commission, charged with the enforcement of the tax laws of this state (Tax Law sec. 171) has issued its consent. It would be inappropriate for the Court, on application of a person not aggrieved, to go behind the acts of the State Tax Commission. The defendant is not aggrieved. Section 1312 B.C.L. was not enacted for the benefit of the defendant or others similarly situated; it was enacted for the benefit of the state itself.

"If the State Tax Commission is satisfied with the plaintiff's tax posture that is sufficient compliance with the tax payment provisions of section 1312 B.C.L." *Id.*

Relying upon *Federal Steel,* Magistrate Bernikow found that consent under BCL § 1304(a)(7) signified satisfaction of outstanding liabilities owed to the state and was the equivalent of BCL § 1312's payment provision.

General Dynamics contends that the *Federal Steel* case was wrongly decided. It insists that BCL § 1312(a) is not simply a revenue statute (and thus waivable by the state), but rather was designed primarily to protect New York domestic corporations from having to do business in New York on less advantageous terms than those enjoyed by foreign corporations. The cases cited by the third-party defendant which state the purpose of the section as such (*Von Arx, A.G. v. Breitenstein,* 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dep't 1976) and *Dixie Dinettes, Inc. v. Schaller's Furniture,* 71 Misc.2d 102, 335 N.Y.S.2d 632 (Civ.Ct.N.Y. 1972)), however, relied as their sole authorities for such statements upon cases construing, not BCL § 1312, but its predecessor, General Corporation Law § 218, which included no tax requirement whatsoever. Moreover, those cases cited by General Dynamics are inapposite since in those cases no consents had been filed by the Tax Commission. For example, in *Von Arx, supra,* the court did not even mention the subject of taxes.

Thus, while General Dynamics' theory as to statutory purpose may be accurate with respect to the authorization requirement of BCL § 1312, such does not appear to be the case with regard to the tax requirement. The history of the section tends to show that it is not. Before the enactment of BCL § 1312, both the authorization requirement and the fee requirement existed as prerequisites to suit in New York, but they appeared in two separate New York statutes, General Corporation Law § 218 [4] and Tax Law § 181.[5] In *F. J. Emmerich Co. v. W. & J. Sloan,* 46 Misc. 513, 515–16, 95 N.Y.S. 39, 40–41 (Sup.Ct.), *aff'd,* 108 App. Div. 330, 95 N.Y.S. 1129 (1st Dep't 1905), the Court noted:

"The curious anomaly is thus presented in this case of the plaintiff's assignor having

4. General Corporation Law § 218 provided:

"A foreign corporation, other than a moneyed corporation, doing business in this state shall not maintain any action in this state upon any contract made by it in this state, unless before the making of such contract it shall have obtained a certificate of authority. This prohibition shall also apply to any successor in title of such foreign corporation and to any person claiming under such successor of such foreign corporation or under either of them." 1909 N.Y.Laws c. 28, § 218.

5. Tax Law § 181 provided in pertinent part:

"Every foreign corporation . . . shall pay to the state treasurer, for the use of the state, a license fee . . . . No action shall be maintained or recovery had in any of the courts in this state by such foreign corporation without obtaining a receipt for the license fee hereby imposed . . . ." 1901 N.Y.Laws c. 558, § 181.

paid into the state treasury in 1902 the franchise tax required by law of foreign corporations duly authorized to do business in this state, although no certificate of such authority had then been issued to it. So far as the inhibition against maintaining an action may rest upon a failure to comply with the franchise tax law, the demurrer should not be sustained, because it is clear that section 181 of the tax law is a revenue regulation for the benefit of the state, which the latter has the right to waive. *Parmele Co. v. Haas,* 171 N.Y. 579, 583, 64 N.E. 440; *Dunbarton Flax Spinning Co. v. Greenwich & J. R. Co.,* 87 App.Div. 21, 23, 83 N.Y.S. 1054. But the failure to procure a certificate, as required by section 15 of the corporation law, in view of the explicit language of that provision that no action shall be maintained by a foreign corporation 'upon a contract made by it in this state unless prior to the making of such contract it shall have procured such certificate' seems to me to be fatal to the plaintiff's right to maintain this action. . . ."

The New York court, in short, found that plaintiff had complied with the tax requirement since that was waivable but had run afoul of the authorization requirement which was not waivable. Here, Ayer has concededly complied with the authorization requirement and will have complied with the tax requirement only if it is waivable.

Although the two statutes, General Corporation Law § 218 and Tax Law § 181, have been combined in one statute, BCL § 1312, this Court does not find any indication that the present tax requirements constitute any less of a revenue statute or are any less waivable than were those involved in *Emmerich.* In fact it appears that the passage of BCL § 1312 was intended to liberalize General Corporation Law § 218 in

permitting foreign corporations to sue in New York. Comment, *Section 1312 of the Business Corporation Law: The Dilemma of Legislative History and Judicial Interpretation,* 30 Fordham L.Rev. 331, 333–34 (1961). Section 218 forbade a foreign corporation from maintaining an action on a contract unless it had a certificate of authority *before* the making of the contract. BCL § 1312 permits a foreign corporation to obtain a certificate of authority even after it has commenced suit. *Hooten Chocolate Co. v. Star Chocolate Novelties Inc.,* 63 Misc.2d 482, 311 N.Y.S.2d 698 (Sup.Ct.1970).

Moreover, the New York Legislature appears to have conferred broad authority upon the Tax Commission to enforce and abate revenue obligations. Until 1977, New York Tax Law § 171(18) gave the State Tax Commission authority to enter into a written agreement with any person including a corporation, "relating to the liability of such person . . . in respect of any tax or fee imposed by article nine [corporate tax] and nine-a [franchise tax]." In 1977, this authority was broadened to include agreements relating not only to corporate and franchise taxes, but also to various other taxes, including "any tax imposed by the tax law or by a law enacted pursuant to the authority of the tax law." 1977 N.Y.Laws c. 123, § 1. Further, New York Tax Law § 1096(c) (McKinney 1975) provides:

"The tax commission, of its own motion, may abate any small unpaid balance of an assessment of tax, or any liability in respect thereof, if the tax commission determines under uniform rules prescribed by it that the administration and collection costs involved would not warrant collection of the amount due."

At the present stage,[6] the Court is satisfied that Trading and Leasing have complied with the requirements of BCL § 1312 and that they may maintain this action.[7]

6. See note 3 *supra.*

7. The Court notes that had a different result obtained under New York law, it would have had to decide a question not raised by the litigants herein: the constitutionality of BCL § 1312 as applied to the present case. The

recent decision of *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.,* 550 F.2d 1320 (2d Cir. 1977), reflects what appears to be growing *disenchantment* with the application of state "door closing" statutes such as BCL § 1312 to diversity suits brought in federal

■ General Dynamics also resists the motion to add Trading and Leasing as parties because of prejudice and lack of diligence on the part of the third-party plaintiff.[8] "Since the thrust of the federal rules is to promote decisions on the merits, the courts will grant amendments, absent countervailing considerations such as prejudice to a party, undue delay of trial, or the movant's bad faith. 3 Moore's Federal Practice ¶ 15.08[2] (1974)." *Graboi v. Kibel,* 432 F.Supp. 572, 575 (S.D.N.Y.1977). The Magistrate was not persuaded here, nor is this Court, that the joinder presents substantial prejudice or undue delay.

Accordingly, the Court grants Ayer's motion to join Trading and Leasing.

### Motion to Dismiss

General Dynamics moved to dismiss the third-party complaint on the ground that Ayer could not assert claims belonging to his corporations. General Dynamics claimed that Trading, Leasing and Associates, not Ayer, are the real parties in interest. In the alternative, General Dynamics also moved to dismiss because Trading, Leasing and Associates are indispensable parties. In view of the Court's granting the motion to join Trading and Leasing, the Court will only discuss the motions to dismiss as they relate to Associates. Further, of the three counts of the amended third-party complaint asserted against General Dynamics, it appears that only the first and third involve Associates.[9]

■ The parties apparently assume that the joinder of Associates would defeat diversity jurisdiction. In recommending that the motion to dismiss be denied,[10] the Mag-

---

court, especially when these involve interstate commerce. The Second Circuit held that:

> "Even if BCL § 1312(a) may be described as affecting the district court's jurisdiction, New York may not place such a financial and procedural burden on a foreign corporation seeking to vindicate its right to bring a diversity action before the federal courts. . . . If a nonresident litigant is to receive the same relief as a resident of New York in a federal diversity suit, then, the offending local statute must give way. To rule otherwise would enable any state to place impermissible financial conditions on free access to the federal courts by those litigants who have met the federal jurisdictional requirements." *Id.* at 1324–25.

The Circuit further stated that *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974) "stands for the proposition that a state 'door closing' statute may not impede a diversity action concerning interstate or foreign commerce, which the present case unquestionably does, brought in a federal court." *Grand Bahama, supra,* at 1326.

The case at bar is not a suit to compel arbitration, and is in that respect distinguishable from *Grand Bahama.* However, the within case does contain elements which touch upon the Federal Aviation Act, 49 U.S.C. § 1301 et seq. and involve interstate and foreign commerce. For example, the Act provides a mandatory system for recording mortgages, leases and other interests, including options to buy. *Feldman v. National Bank of North America,* 511 F.2d 465, 466 n.1 (2d Cir. 1975). In a situation in which no particular federal statute was involved, the court in *Manhattan Fuel Co. v. New England Petroleum Corp.,* 439 F.Supp. 959, 966 n.5 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1368 (2d Cir.

1978) remarked: "I am not unmindful of the Supreme Court's ruling in *Allenberg* . . . that a state 'door closing' statute, such as that invoked here, may not preclude a federal diversity action which concerns interstate commerce; the interstate aspects of the fuel oil business are manifest."

On the other hand, neither *Grand Bahama* nor *Manhattan Fuel Co.* distinguished between BCL § 1312 and the Mississippi door closing statute in *Allenberg* which seemed to preclude forever an action upon a contract made within the state if at the time the claim occurred, the plaintiff had not obtained the requisite authority. BCL § 1312, by comparison, permits the action to be maintained once authority has been obtained and the taxes paid.

8. Ayer contends that a substantial part of the delay in getting the certificates of authority was occasioned by bureaucratic delays in Panama in effecting the name changes. See note 1 *supra.*

9. The second count of the amended third-party complaint alleges that General Dynamics breached its duties as a creditor-mortgagee in failing to act in a commercially reasonable manner with regard to the disposition of the two airplanes repossessed under its mortgages. General Dynamics concedes that only Trading and Leasing, as mortgagors of the aircraft, have any legal interest in the two planes as collateral.

10. Neither party has raised any objections to that portion of the Magistrate's report and recommendations dealing with General Dynamics' motion to dismiss.

istrate basically relied on the concept of ancillary jurisdiction. The Magistrate found that since the first count was for indemnification,[11] the claim is ancillary to the main claim of Marine Midland Bank against Ayer and therefore no independent ground should be required. See 3 Moore's Federal Practice ¶ 14.26, at 14–527 (1974). As stated in *Eikel v. States Marine Lines, Inc.,* 473 F.2d 959, 965 (5th Cir. 1973):

> "It is well established that once the court properly has jurisdiction over the main claim, as it did here, it can then adjudicate other claims among the non-diverse parties that are closely related to the main claim and are ancillary to the main suit. This is so even where jurisdiction would otherwise be lacking over the ancillary claim."

This is true even though the main claim has been dismissed and severed. See *Dery v. Wyer,* 265 F.2d 804 (2d Cir. 1959); 3 Moore's Federal Practice ¶ 14.26, at 14–532 (1974).

The Magistrate also found the concept of ancillary jurisdiction to be flexible enough to provide for joinder of Associates on the third count. In the third count, Ayer claims that General Dynamics was negligent in collecting the "Fly Now, Pay Later" notes. Since Associates is arguably a beneficial owner of the notes because of the agreements with General Dynamics, General Dynamics argues that it may face multiple liability if Associates is not joined. The Magistrate also determined that, although the third count was not a claim for indemnity it was related sufficiently to the main claim to be deemed ancillary to it.

Although not specifically stated by the parties, the Court assumes that diversity would be lacking by the joinder of Associates because Marine Midland Bank and Associates are New York corporations. Thus viewed, the case lacks the complete diversity of citizenship between each plaintiff and each defendant mandated by *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). However, if the third-party action, which has been severed, is viewed separately, there appears to be complete diversity since General Dynamics is a Delaware corporation with its principal place of business in Missouri.[12]

■ Even if the Court could not view the third-party action separate from the main claim in determining diversity, the Court notes the Supreme Court's recent statement:

> "It is not unreasonable to assume that, in generally requiring complete diversity, Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. Those practical needs are the basis of the doctrine of ancillary jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978).

Although the Supreme Court dismissed the action in *Owen Equipment* for lack of diversity jurisdiction, the Court notes several equitable considerations in the present case which distinguish it from *Owen Equipment.* In *Owen Equipment,* one of the crucial factors noted by the Supreme Court in denying ancillary jurisdiction was that "the nonfed-

---

11. The first count essentially alleges that General Dynamics breached an agreement with Ayer by precluding him from acquiring clear title in order to sell or lease both aircraft and to pay the indebtedness owed plaintiff Marine Midland Bank. It is also alleged that Ayer sustained further damage by virtue of the fact that the aircraft is stored with Associates which has advanced and paid all storage and related expenses, although Ayer argues that the storage expenses are only incidental. General Dynamics, however, asserts that Associates was the sales agent for the disposition of the aircraft under the alleged agreement and could,

therefore, bring a claim for breach of the agreement.

12. It is noted that the same question is presented in a different form in the discussion of ancillary jurisdiction. For example, in *Dery v. Wyer,* 265 F.2d 804 (2d Cir. 1959), the Court held that the mere fact that a main claim is terminated should not oust the jurisdiction of a third-party claim. However, the Court did not consider whether ancillary jurisdiction may be asserted in a motion to join *after* the main claim has been terminated or severed.

eral claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. . . . A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations." *Id.* By contrast, in the present case, both the main and third-party actions were originally brought in state court and were removed to this Court upon petition of General Dynamics which now seeks to have the action dismissed for lack of diversity. This Court does not find this to be a case where the plaintiff sought to "defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants." See *id.* at 372, 98 S.Ct. at 2403.

In *Owen Equipment,* the Supreme Court also found that the nonfederal claim "was simply not ancillary to the federal one in the same sense that, for example, the impleader by a defendant of a third-party defendant always is." *Id.* at 373, 98 S.Ct. at 2404. In the present case, count one is clearly ancillary according to the Supreme Court's interpretation and count two arguably so since Associates appears to have a beneficial, rather than direct, interest in the events.

Finally, the Court finds itself constrained to exercise whatever discretion it has to permit joinder of Associates so that this "entire, logically entwined lawsuit" may proceed, and "[i]n view of the ease with which disposition of all claims herein can be made in this one action." See *Noland Co. v. Graver Tank and Manufacturing Co.,* 301 F.2d 43, 50 (4th Cir. 1962).

Accordingly, the Court hereby grants Ayer's motion to join Aerospace Trading Corp. and Aerospace Leasing Corp., and hereby denies General Dynamics' motion to dismiss upon condition that Frederick B. Ayer and Associates, Inc. is joined as a third-party plaintiff.

SO ORDERED.