**ILRO PRODUCTIONS, LTD., Plaintiff,**

v.

**MUSIC FAIR ENTERPRISES, INC., et al., Defendants.**

**No. 81 Civ. 4786.**

United States District Court, S. D. New York.

March 23, 1982.

Joseph Eisinger, New York City, for plaintiff.

1. Complaint, ¶ 1.

2. *Id.*, ¶ 2.

3. According to the complaint, plaintiff is the exclusive agent authorized to enter contractual arrangements for the performer or to permit use of his name in advertisements. *Id.*, ¶ 16.

Jerome J. Strelov, Blumenthal & Lynne, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is a diversity action between plaintiff Ilro Productions, Ltd. ("Ilro"), a California corporation with principal place of business in California,[1] and defendants Music Fair Enterprises, Inc. ("Music Fair"), a New York corporation with principal place of business in this State,[2] and two individuals. Plaintiff claims that it entered into a contract with Music Fair to provide the services of a renowned actor for defendant's musical production in August 1980.[3] In October of that year, Music Fair allegedly repudiated the agreement by failing to produce the show, thereby damaging plaintiff in an unascertained amount claimed to be in excess of $10,000.[4] In addition to breach of contract, plaintiff has alleged causes of action for fraud, interference with prospective economic advantage, unauthorized use of name, and defamation.

Defendants have moved for an order compelling plaintiff to post a bond as security for costs of this action and staying proceedings until such time as the bond is posted. For the reasons stated below, the motion is granted.

## POSITION OF THE PARTIES

*Defendants*

Defendants seek to require plaintiff to post security for costs based on their belief that, if they are successful in the action, "they will be prejudiced by having to go to California to recover costs ...."[5] Three facts are alleged to support their belief. First, plaintiff is a nonresident corporation,

4. *Id.*, ¶ 7. The relief sought is: "general and special damages according to proof at trial," punitive damages in the amount of $1,000,000, and interest and costs.

5. Affidavit of Jerome J. Strelov, attorney for Defendants, sworn to on September 25, 1981, ¶ 4.

and is not licensed to do business in New York. Second, plaintiff was suspended by the Secretary of State of the State of California on July 1, 1976, for failure to pay taxes.[6] Third, plaintiff originally commenced this action in the Superior Court of California, County of Los Angeles, which action was removed to federal court and thereafter dismissed for lack of personal jurisdiction.

*Plaintiff*

Plaintiff points out that defendants have failed to show that the present action was commenced in bad faith or that it lacks merit or is frivolous.[7] It further explains that the tax suspension was the result of a misunderstanding, and that all taxes have since been paid.[8] Finally, plaintiff's President avers that plaintiff "is fully solvent and is up to date in the payment of all of its obligations ...."[9]

## DISCUSSION

The Civil Rules of the District Court for the Southern District of New York, Rule 40, provides:

> The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to non-compliance as are just, and among others ... staying further proceedings until the bond is filed ....

Requiring a bond for costs under the identical predecessor of this rule was approved by the Second Circuit in *Leighton v. Paramount Pictures Corp.*, 340 F.2d 859 (2d Cir. 1965), where the Court explained that the rule "serves only to implement a limited grant of judicial control over the administration of a lawsuit." *Id.* at 860. Under the rule:

> [A] court may take all the pertinent circumstances into account including the conduct of the litigants and the background and purpose of the litigation.

*Id.* at 861. Even if the plaintiff's claim has merit, the court may order security to be posted in furtherance of the effective administration of the lawsuit.[10] *Id.* *See also Leslie One-Stop in Pennsylvania, Inc. v. Audiofidelity, Inc.*, 33 F.R.D. 16, 17 (S.D.N.Y. 1963).

However Rule 40 is interpreted, it does not automatically follow that the rule governs this diversity action, since the Court must apply relevant New York law, if any, to "substantive" matters.[11] New York has a long-standing rule with respect to security for costs codified in N.Y. CPLR § 8501 (McKinney 1963). That statute provides:

> (a) *As of right.* Except where the plaintiff has been granted permission to proceed as a poor person or is the petitioner in a habeas corpus proceeding, upon motion by the defendant without notice, the court or a judge thereof shall order security for costs to be given by the plaintiffs

6. *Id.* Plaintiff subsequently was reinstated.

7. Affidavit of Curtis Roberts, President of Plaintiff, sworn to on October 15, 1981, ¶ 6.

8. *Id.,* ¶ 7.

9. *Id.,* ¶ 9.

10. In *Leighton,* the salient factor was that plaintiff "was an habitual *pro se* litigant whose claims were often conclusory and lacking in merit." 340 F.2d at 861. No similar situation exists in the present case.

11. *E.g., Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 555, 69 S.Ct. 1221, 1229, 93 L.Ed. 1528 (1949); *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945); *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Cases, in which the criteria for requiring federal plaintiffs to post security for costs under Rule 40 or its equivalent have been enunciated, are inapposite. Those cases involve claims under the federal antitrust, civil rights, and securities laws. *See, e.g., Leighton v. Paramount Pictures Corp.,* 340 F.2d 859 (2d Cir. 1965); *Competitive Associates, Inc. v. Fire Fly Enterprise, Inc.,* 59 F.R.D. 336 (S.D.N.Y.1972); *State Wide Enterprises, Inc. v. United Gypsum Co.,* 238 F.Supp. 604 (E.D.Mich.1965); *Leslie One-Stop in Pennsylvania, Inc. v. Audiofidelity, Inc.,* 33 F.R.D. 16, 17 (S.D.N.Y.1963); *A. and R. Theatre Corp. v. Azteca Films, Inc.,* 32 F.R.D. 47 (S.D.N.Y.1962); *Graves v. City of Bolivar,* 154 F.Supp. 625 (W.D.Mo.1957).

where none of them is a domestic corporation, a foreign corporation licensed to do business in the state or a resident of the state when the motion is made.

Thus, had plaintiff commenced this action in New York Supreme Court, defendants could have claimed security for costs as of right. Furthermore, if plaintiff had brought suit in state court, the action automatically would be stayed under N.Y. CPLR § 8502 upon order of that court requiring security for costs.[12] Under Local Rule 40, an application for a stay of the action would be permitted only *after* an initial order requiring security and a subsequent failure by plaintiff to comply with said order.

The issue presented is whether the Court should look to state or federal law in deciding the motion for security for costs. Applying the criteria approved in the case authority cited *supra*, note 11, the Court in its discretion under Local Rule 40 could deny defendants' motion for security for costs. On the other hand, the opposite result is mandated under state law. Thus, the choice of law question is not an academic one.

It is useful at the outset to state what this case does not involve. No federal statute, rule or regulation has been enacted concerning the posting of security for costs by a party. It cannot be said that a federal policy exists with respect to the security issue. Furthermore, the Court for the Southern District of New York, in promulgating Rule 40, has not committed itself to a specific policy. That rule simply permits a judge of the Court to impose a security

obligation on a party as justice requires. Therefore, the motion herein presents a clear *Erie*[13] question. Accordingly, the Court must look to the Rules of Decision Act,[14] as interpreted by the Supreme Court, to determine the applicable rule of law.[15]

In *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court overruled *Swift v. Tyson*, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865, reasoning that the case "introduced grave discrimination by non-citizens against citizens. It made rights ... vary according to whether enforcement was sought in the state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the non-citizen." (footnote omitted) *Id.* at 74–75, 58 S.Ct. at 820–821. It went on to hold:

> *Third.* Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts.

*Id.* at 78, 58 S.Ct. at 822.

More recently the Supreme Court explained that, under *Erie* and its progeny,

---

**12.** If plaintiff failed to post such security within 30 days, defendants could move the state court for dismissal of the complaint.

**13.** *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**14.** That Act, 28 U.S.C. § 1652, provides:

The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

**15.** In the seminal article by John H. Ely, "The Irrepressible Myth of Eire," 87 Harv.L.Rev. 693 (1974) [hereinafter cited as "Myth"], explains that:

[W]hen the application of a Federal Rule is at issue, the Rules Enabling Act—and not the Rules of Decision Act as construed by *Erie R.R. v. Tompkins* and other cases—should determine whether federal or state law is to be applied.

*Id.* at 718. *See also Walker v. Armco Steel Corp.*, 446 U.S. 740, 747–49, 100 S.Ct. 1978, 1983–84, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer*, 380 U.S. 460, 470–72, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965).

"choices between state and federal law are to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to the policies underlying the *Erie* rule." [16]  Those policies include:

1) elimination of the unfairness of permitting the character or result of a litigation materially to differ because the suit is brought in federal court; [17]

2) nullification of the inducement to forum shop that was embodied in the rule of *Swift v. Tyson*; and

3) prevention of the undercutting of state policies as expressed in state laws relating to subjects other than the mere management of litigation.[18]

In the view of this Court, the § 8501 requirements are applicable to this case because "the choice between [federal and state law] is material in the sense *Hanna* indicated." [19]  In arriving at that conclusion, the Court has carefully considered the three factors relied upon in varying degrees by the Supreme Court.

### A.  *Fairness*

Failure to follow the New York security for costs statute cannot occasion the same type of unfairness found in cases where state law, applicable in suits between cocitizens, could be circumvented by an out-of-state plaintiff bringing a diversity action in federal court.  The mandatory security for costs law does not arise in an action brought by a resident plaintiff:  It only applies to foreign plaintiffs.  However, inequity could result from the jurisdictional amount limitation on diversity jurisdiction if the federal courts of New York do not follow state law.  Resident defendants sued by out-of-state plaintiffs with large claims could not invoke the mandatory security for cost/stay of action provisions of § 8501–02, while those defending claims under $10,000 could obtain an *ex parte* order of security for costs.  Such a difference, caused by the refusal of federal courts to follow § 8501, would result in " 'inequitable administration' of the law," *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980), unjustified by the "fortuity" that one plaintiff was able to sue in federal court.

Although state law pertinent to this case is far less substantive than that invoked in *Erie*, it nonetheless can significantly affect the outcome of litigation.[20]  As explained in 8 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 8501.07 at 85–15:

Obviously, in an instance in which a plaintiff would be required by CPLR 8501(a) to give security and could not or refused to do so, a difference in outcome would result if a New York federal court

---

**16.**  *Hanna v. Plumer*, 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965).  *See also* "Myth," *supra* note 15, at 712–14, 716 n.126, 717, 722–23.

**17.**  *See* "Myth," *supra* note 15, at 712.  There, the commentator describes the unfairness as follows:

The Court was referring to the unfairness of affording a nonresident plaintiff suing a resident defendant a unilateral choice of the rules by which the lawsuit was to be determined.  But there is another unfairness ... —the unfairness of subjecting a person involved in litigation with a citizen of a different state to a body of law different from that which applies when his next door neighbor is involved in similar litigation with a cocitizen. [footnotes omitted]

**18.**  *Id.* at 716 n.126.

**19.**  *Id.* at 723.  *Contra, Rapol v. Henry R. Jahn & Son, Inc.*, 84 F.R.D. 42, 45 (S.D.N.Y.1979);

*Trophy Productions Inc. v. Sperling*, 17 F.R.D. 416, 418–20 (S.D.Cal.1955); 6 Moore, *Federal Practice* ¶ 54.73 at 458–59 (1972).

**20.**  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).  In *York*, the Court ruled that an action barred in state court by the statute of limitations could not be brought in a federal court under its diversity jurisdiction.  It explained: "The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the state, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* at 109, 65 S.Ct. at 1470.

decided, as a matter of discretion ..., that security need not be posted. In such a case the federal court would be providing a forum in an instance in which the New York policy ... directs that none should be available. [footnote omitted] Furthermore, as discussed *infra*, the right to demand security and stay of action available to resident defendants in state court promotes the substantive decision of the New York State Legislature to allow prevailing parties to collect litigation costs, and to discourage strike suits by foreign plaintiffs against resident defendants. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980).

### B. *Forum Shopping*

Refusal by the federal courts to follow the mandatory provisions of § 8501(a) is an obvious inducement to all foreign plaintiffs to initiate their state-based claims in federal court. The evil flowing from forum shopping sought to be remedied by *Erie* was the unfairness to classes of resident litigants that results from the application of different rules of decision. In addition, the Court observes that modern day litigants are in need of no additional encouragement to flood the federal courts with state claims.

The Court is aware of the comment in Moore's *Federal Practice* that posting security for costs imposes a far less significant burden on a nonresident plaintiff than that involved in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93

L.Ed. 1528 (1949), where the Court determined that state law, requiring security for costs *and* expenses in shareholder derivative actions, should be followed.[21] *Cohen*, however, did not address the issue before this Court. The statute involved in *Cohen* was clearly substantive, in that it created new stockholder liabilities. Moreover, the *Cohen* Court stated, in dicta, that "[r]ules which lawyers call procedural do not always exhaust their effect by regulating procedure." *Id.* at 555, 69 S.Ct. at 1229.

It cannot be said that §§ 8501–02 affect state-created rights negligibly or merely "formally,"[22] or that the variation between state and federal law is nonsubstantial or trivial,[23] or that the requirements of federal and state rules are "essentially fungible."[24] This case falls somewhere between *Cohen* and *Hanna v. Plumer*.[25] In light of the policy considerations discussed below, the Court takes the view that the small amount of money initially involved does not thereby render the relevant New York statute one of mere management of litigation, thereby permitting a federal court to disregard its commands under the Rules of Decision Act.

### C. *Policy Concerns*

New York law creates for the prevailing party in civil litigation a right to recover costs. N.Y. CPLR § 8101 (McKinney 1963) In order to promote the function of that statute,[26] and in order to discourage harassment of New York citizens due to the institution of groundless suits,[27] the law requires

---

**21.** 6 Moore, *Federal Practice* ¶ 54.73 at 1458 (1972).

**22.** *Guaranty Trust Co. v. York*, 326 U.S. at 110, 65 S.Ct. at 1470.

**23.** *Hanna v. Plumer*, 380 U.S. at 468, 85 S.Ct. at 1142. *See also* "Myth," *supra* note 15, at 713.

**24.** "Myth," *supra* note 15, at 713.

**25.** In *Hanna v. Plumer*, the Court found that the difference between the state and federal rules as to service of summons and complaint (delivery at personal residence versus delivery in hand) "would be of scant, if any, relevance to the choice of a forum." 380 U.S. at 469, 85 S.Ct. at 1143.

**26.** *See* 8 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 8501.07 at 85–17 to 18 (1964):

> Although Article 85 does not create 'a new liability,' inasmuch as an unsuccessful plaintiff would have to pay costs even in its absence, Article 85 does represent a value judgment by the New York State Legislature that defendants must be protected against certain classes of plaintiffs and this judgment should not be ignored.

**27.** *See* 4A McKinney's Forms, CPLR § 12.384 (1977) ("The object of requiring security for costs is to assure the defendant that in the event he is successful he will have an available party within the jurisdiction for collection of

that: 1) nonresident plaintiffs provide security for litigation costs, upon demand by domestic defendants; and 2) litigation be stayed until such security is provided. Thus, § 8501 and § 8502 are statements by the New York legislature that pretrial security requirements for out-of-state plaintiffs will further important state goals.[28]

The situation herein is similar to that in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), where the Court determined first that the pertinent state law, which subjected plaintiff shareholders to liability for costs, expenses and attorney's fees incurred by the corporation in connection with a derivative lawsuit, created a substantive corporate right and a new shareholder liability.[29] It further held that, in diversity actions, federal courts were bound to apply the corollary requirement that security for those costs and expenses be posted at the commencement of litigation.[30]

The analysis in *Cohen* was utilized again in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). There, the Court was faced with the issue whether, in a diversity action, state or federal law should be followed "in determining when an action is commenced for the purpose of tolling the state statute of limitations." *Id.* at 741, 100 S.Ct. at 1980. It first observed that state statutes of limita-

tions bear "vitally" on state-created rights and therefore should be followed in diversity cases, citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Then it found that "the Oklahoma statute [at issue] is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations." 446 U.S. at 751, 100 S.Ct. at 1985. Since actual service was deemed an integral part of the statute of limitations, the Court held that the requirement should control in an action based on state law filed in federal court. In concluding, the Court observed:

> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts . . . should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.

*Id.* at 753, 100 S.Ct. at 1986.

■ This Court can find no reason why the present, state law action, which concededly could not go forward in the state courts until plaintiff posts security for costs, should proceed to litigation. There is no federal policy in this subject area, conflicting or otherwise.[31] On the other hand,

---

costs, and to protect a party from the harassment of groundless suits."). *See also Dixie Dinettes, Inc. v. Schaller's Furniture*, 71 Misc.2d 102, 335 N.Y.S.2d 632 (Kings Co. 1972); *Wolf v. Atkinson*, 182 Misc. 675, 49 N.Y.S.2d 703 (New York Co. 1944).

**28.** *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980).

**29.** 337 U.S. at 555, 69 S.Ct. at 1229.

**30.** The *Cohen* Court held that the New Jersey statute "creates a new liability . . . for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as 'costs.'" *Id.* That language was quoted in Moore's *Federal Practice, supra* note 21, as justification for treating security for

costs as "procedural" for *Erie* purposes. However, the quoted passage can be read more narrowly as support for the Court's holding that the New Jersey statute created *new* rights and obligations. So interpreted, the passage does not imply that the "security" aspect of the statute is procedural in an *Erie* sense. This interpretation is consistent with the Supreme Court's finding that the "new liability would be without meaning and value . . . if it resulted in nothing but a judgment for expenses . . . . Therefore, a procedure is prescribed by which the liability is insured . . . . We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device." *Id.* at 556, 69 S.Ct. at 1230.

**31.** *Accord, Cohen v. Beneficial Industrial Loan Co.*, 337 U.S. 541, 556, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528 (1949) ("None [of the federal policies] conflict with the statute in question and

state policy has been clearly articulated by the New York State Legislature and the New York courts. *Cf. Vishipco Line v. Chase Manhattan Bank,* 660 F.2d 854, 865–66 (2d Cir. 1981) (in breach of contract action, federal court should follow court-made "breach-day rule" of currency conversion). Under *Erie* and its progeny, the Court holds that state law should apply to defendants' motion for security for costs.

## CONCLUSION

■ Defendants' motion for security for costs and stay of the present action pending the posting of such security is granted. Plaintiff is directed to post security of $500 within ten days of the filing of this order.

It Is So Ordered.

all may be observed by a federal court, even if    not applicable in the state court.").