37 F.3d 573
 SIMULNET EAST ASSOCIATES, a New York limited partnership
d/b/a Simulnet L.P.; Cable/Mac Services, Inc., a
New York corporation, general partner,
Plaintiffs-Appellants,
v.
RAMADA HOTEL OPERATING COMPANY, a Delaware corporation;
Jose L. Torres, an individual, Defendants-Appellees.
 No. 92-16737.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1994.
Decided Oct. 7, 1994.
 
 J. Randall Jones and William L. Coulthard, Harrison, Kemp & Jones, Las Vegas, NV, for plaintiffs-appellants.
 David N. Frederick, Lionel Sawyer & Collins, Las Vegas, NV, for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before: HUG, FARRIS, and O'SCANNLAIN, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 The sole issue in this diversity action is whether the district court abused its discretion in requiring, on the eve of trial, a $500,000 cost bond as a condition to proceeding to trial. The litigation had proceeded for three years without a demand for a cost bond. The district court granted defendants' motion for a bond five days before trial. When the plaintiffs were unable to post the bond, the district court dismissed the action. We hold that this was an abuse of discretion, and we reverse.
 
 I.
 
 2
 Simulnet is the successor in interest to several agreements to provide satellite television services to 25 separate Ramada Hotel properties throughout the country. Simulnet sued Ramada under various legal theories, including breach of contract. The litigation progressed for three years, during which time there was extensive discovery generating some 4,000 documents. The district court denied Ramada's two motions for summary judgment, as well as its motion to dismiss.
 
 
 3
 At the pretrial conference five days before the scheduled trial, Ramada requested that the district court order Simulnet to post a cost bond for the fees and costs Ramada had thus far expended. Ramada contended it was entitled to a cost bond that included attorneys' fees because the contract provided that the prevailing party was entitled to attorneys' fees. In response to an inquiry by the district court, Ramada indicated that it had incurred attorneys' fees in the amount of $397,000, and costs of approximately $200,000. The district court then inquired as to whether Simulnet would be able to pay those fees and costs if Ramada prevailed in the litigation. Simulnet acknowledged that it was insolvent and would therefore be unable to pay the fees and costs incurred by Ramada in defending the suit. The district court subsequently ordered Simulnet to post a cost bond in the amount of $500,000 as a condition to proceeding to trial. Simulnet was unable to post the requisite bond, and the district court dismissed the action. Plaintiff appeals. Jurisdiction in the district court is based on 28 U.S.C. Sec. 1332; appellate jurisdiction is based on 28 U.S.C. Sec. 1291.
 
 II.
 
 4
 There is no specific provision in the Federal Rules of Civil Procedure relating to security for costs. However, the federal district courts have inherent power to require plaintiffs to post security for costs. In re Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1121 (9th Cir.1987). "Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs, as they did prior to the federal rules; this is especially common when a non-resident party is involved." 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd Sec. 2671 (footnotes omitted). We review for abuse of discretion the district court's order requiring security for fees and costs. Montserrat Overseas Holdings, S.A. v. Larsen, 709 F.2d 22 (9th Cir.1983).
 
 
 5
 In response to Ramada's motion, the district court imposed the requirement of the $500,000 cost bond to ensure that Ramada would be compensated for fees and costs already incurred as a result of defending this litigation. The district court's requirement of the cost bond was based on the language of the contract that provided for recovery of attorneys' fees and costs to the prevailing party in the underlying contract dispute. The district court reasoned that because there was a "strong possibility" that the defendants would prevail on the dominant theory of the case, the requirement of the cost bond was appropriate.
 
 
 6
 The Nevada District Court has not adopted a court rule relating to security for costs but has, by case law, adopted the pertinent Nevada statute as the appropriate procedure, stating:
 
 
 7
 It has been the policy of the United States District Court for the District of Nevada to enforce the requirements of NRS Sec. 18.130 in diversity actions. This is also the general practice elsewhere. See Ilro Productions, Ltd. v. Music Fair Enterprises, 94 F.R.D. 76 (S.D.N.Y.1982); Keller Research Corp. v. Roquerre, 99 F.Supp. 964 (S.D.Cal.1951); Port Construction Company v. Virgin Islands Housing Authority, 284 F.Supp. 774 (D.V.I.1968).
 
 
 8
 Hamar v. Hyatt Corp., 98 F.R.D. 305, 305-06 (D.Nev.1983). See also Arrambide v. St. Mary's Hosp., Inc., 647 F.Supp. 1148, 1149 (D.Nev.1986) and Truck Ins. Exchange v. Tetzlaff, 683 F.Supp. 223, 227 (D.Nev.1988) (confirming the application of NRS Sec. 18.130 in diversity cases).
 
 
 9
 Nev.Rev.Stat. Sec. 18.130 provides in pertinent part:
 
 
 10
 18.130. When plaintiff may be required to secure costs; affidavits of sureties; dismissal of action if undertaking not filed.
 
 
 11
 1. When a plaintiff in an action resides out of state, or is a foreign corporation, security for the costs and charges which may be awarded against such plaintiff may be required by the defendant, by the filing and service on plaintiff of a written demand therefor within the time limited for answering the complaint. When so required, all proceedings in the action shall be stayed until an undertaking, executed by two or more persons, be filed with the clerk, to the effect that they will pay such costs and charges as may be awarded against the plaintiff by judgment, or in the progress of the action, not exceeding the sum of $500; or in lieu of such undertaking, the plaintiff may deposit $500, lawful money, with the clerk of the court, subject to the same conditions as required for the undertaking.....
 
 
 12
 2. A new or an additional undertaking may be ordered by the court or judge upon proof that the original undertaking is insufficient security, and proceedings in the action stayed until such new or additional undertaking be executed and filed.
 
 
 13
 The basic purpose for a cost bond is well-illustrated by the Nevada statute. It is imposed at the commencement of an action to secure future costs that the defendant may incur if the plaintiff is allowed to proceed. The initial request must be made within the time limit for answering the complaint. Only if the initial request is timely made can a defendant request additional security as the litigation progresses. Ramada admits it did not fulfill the requirements of Nev.Rev.Stat. Sec. 18.130 by filing its first request five days before trial. Thus, in order to uphold the requirement of the bond, we would have to ignore the existing case law precedent of the Nevada District Court and the common practice elsewhere, which is to apply the applicable state law.
 
 Ramada contends, however, that
 
 14
 the District Court imposed its bond requirement, not because of any state of federal statute, but because plaintiffs assumed a contractual obligation to pay defendants' costs and attorney's fees should defendants prevail, there was a high probability defendants would prevail, and plaintiffs had caused defendants to incur nearly $600,000 in attorney's fees and costs without making any provision for satisfying their contractual obligation.
 
 
 15
 Ramada relies on our decision in Montserrat to support this proposition and convinced the district court to impose the bond on this basis. There are numerous significant differences between that case and this one that make that precedent inapplicable to this case. We enumerate the distinguishing factors.
 
 
 16
 1. The cost bond in Montserrat was imposed pursuant to Rule 290-1 of the Rules of Court of the District Court of the District of Hawaii, which provided:
 
 
 17
 The court, on motion or of its own initiative, may order any party to file an original bond or additional security for costs in such an amount and so conditioned as the court by its order may designate.
 
 
 18
 In contrast, the bond in this case was imposed contrary to Nevada District Court precedent that had adopted Nev.Rev.Stat. Sec. 18.130 as the method of obtaining a security bond.
 
 
 19
 2. The cost bond in Montserrat was to secure costs and fees that the Hawaii statutes allowed the court to tax to the losing party as a part of the fees and costs. The cost bond in that case was not based upon the construction of any contractual provision in the contract being construed. Although the Nevada statutes permit the taxing of certain allowable costs, they specifically exclude taxing attorneys' fees as a part of the costs and fees in "any action arising out of a written instrument or agreement which entitles the prevailing party to an award of reasonable attorney's fees." See Nev.Rev.Stat. Sec. 18.010. In Nevada, any award of attorneys' fees in that circumstance is not a matter to be taxed to the losing party by the court, but is part of the substantive judgment on the contract. Ramada has provided no authority, and we find none that permits a security bond to be based on a contractual right to costs and attorneys' fees. Certainly, Montserrat does not support that proposition.
 
 
 20
 3. One of the elements relied upon in Montserrat was the appearance of vexatiousness in pursuing the action. In this case, the district court emphatically stated that it was not relying on vexatiousness.
 
 
 21
 4. There is no indication that the bond in Montserrat was imposed to secure costs and attorneys' fees already expended. As we have stated, the normal purpose of a cost bond is to secure costs a defendant may have to expend in the future. This permits the plaintiff to determine whether to proceed with the action or the manner in which to proceed with the action.
 
 
 22
 In requiring a security bond for defendants' costs, care must be taken not to deprive a plaintiff of access to the federal courts. To do so has serious constitutional implications. Our statutes and case law make it evident that we studiously avoid limitation of access to the courts because of a party's impecunious circumstance. For example, 28 U.S.C. Sec. 1915(a) provides in pertinent part:
 
 
 23
 Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor.
 
 
 24
 In order to avoid depriving a plaintiff of access to the courts by a security bond requirement, the courts in some cases must strike a delicate balance.
 
 
 25
 The First Circuit made an illuminating comment on this, stating that the court must balance
 
 
 26
 (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective. And just as factors such as the absence of attachable property within the district or the conduct of the parties may bear on a defendant's legitimate need for the prophylaxsis of a bond, so too, a plaintiff's ability to post surety for costs must weigh in the balance when the third figure of the equation is tabulated. While it is neither unjust nor unreasonable to expect a suitor "to put his money where his mouth is," cf. In re Stump, 449 F.2d 1297, 1298 (1st Cir.1971) (per curiam), toll-booths cannot be placed across the courthouse doors in a haphazard fashion. The district court, in the exercise of its sound discretion, must settle upon an assurance which is fair in the light not only of the case itself and of the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff.
 
 
 27
 Aggarwal v. Ponce School of Medicine, 745 F.2d 723, 727-28 (1st Cir.1984) (footnote omitted).
 
 
 28
 In the case at hand, the visiting district judge did not apply district court precedent that utilizes Nev.Rev.Stat. Sec. 18.130 for security bonds in diversity cases. The bond imposed was for past expenses incurred by the defendants, which are not taxable costs under Nevada law. The litigation had proceeded for three years without a request for a bond and had survived motions for summary judgment and dismissal. The court knew that the plaintiffs could not post the bond, but imposed the bond because of its belief that the defendants would prevail in the jury trial, even though the court declined to hold the plaintiffs' claims were vexatious. In practical effect, this amounted to a judgment as a matter of law in a case where discovery proceedings revealed there was a genuine issue of material fact to be determined by the jury. Under the circumstances of this case, the imposition of the security bond requirement was an abuse of discretion. We reverse and remand for further proceedings.
 
 
 29
 REVERSED and REMANDED.