**In the Matter of the Arbitration between BURMAH OIL TANKERS, LTD., Petitioner,**

**and**

**TRISUN TANKERS, LTD., Respondent.**

**No. 88 Civ. 532 (LFM).**

United States District Court, S.D. New York.

June 16, 1988.

Haight, Gardner, Poor & Havens by Mark C. Flavin, New York City, for petitioner.

Burlingham, Underwood & Lord by Terry L. Stoltz and David W. Fields, New York City, for respondent.

## OPINION

MacMAHON, District Judge.

Burmah Oil Tankers, Ltd. ("Burmah"), the charterer of the M/T TRISUN, petitions for an order, pursuant to 9 U.S.C. § 4 (1982), permanently staying arbitration demanded by Trisun Tankers, Ltd. ("Trisun"), the owner of the M/T TRISUN.

## BACKGROUND

This is the second dispute between these parties arising out of the same 1984 charter. The facts concerning the charter are set forth at length in the arbitration panel's

decision resolving the parties' first dispute.[1]

Briefly, on June 12, 1984, Burmah entered into an Asbatankvoy charter party with Trisun for use of the M/T TRISUN to carry crude oil from Nigeria to Canada and the Bahamas. The cargo was loaded beginning June 14, 1984, and the M/T TRISUN completed discharge on July 17, 1984. After investigating the cause of cargo losses, revealed by comparing shore figures for loading and discharge, Burmah charged that Trisun had converted approximately 9,000 barrels of oil. Burmah withheld a roughly equivalent amount of freight due as security for the short delivery. In response, Trisun demanded arbitration as provided for by a clause in the charter party.[2]

The arbitration panel conducted seven evidentiary hearings at which the parties submitted documentary evidence and testimony of witnesses. The parties also submitted post-hearing briefs. The first hearing was held August 16, 1984, and the panel accepted additional evidence until September 18, 1985. The charter expressly provided that "[u]ntil such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination."

Trisun initially sought a partial final award for the amount withheld by Burmah, contending that Burmah had no right under the charter to withhold payment on account of claimed shortages. The panel denied Trisun's request based on the seriousness of Burmah's charges that Trisun had breached the charter by converting cargo.[3]

In a decision dated September 2, 1986, a majority of the arbitration panel concluded that Trisun had converted the missing cargo to its own use. The panel awarded the full value of the converted cargo to Burmah and returned the balance of withheld freight to Trisun. Burmah then petitioned this court to confirm the award and Trisun cross-petitioned to vacate it. We confirmed the arbitrators' decision on June 2, 1987,[4] and the Second Circuit affirmed the judgment on November 2, 1987.[5]

On December 30, 1987, Trisun demanded arbitration of another claim arising out of the same 1984 charter for unpaid demurrage in the amount of $47,515.58 plus interest. Trisun had first invoiced Burmah for the demurrage on August 3, 1984. Burmah responded to Trisun's arbitration demand by appointing an arbitrator while reserving its rights to oppose arbitration.

Burmah now petitions for a permanent stay of arbitration, claiming that all rights and obligations under the charter party are merged in the final arbitration award.

## DISCUSSION

■ Initially, we must determine a jurisdictional question that was not addressed by the parties. Although Burmah petitioned for a stay under 9 U.S.C. § 4, nothing in that provision of the Federal Arbitra-

---

1. *Trisun Tankers, Ltd. v. Burmah Oil Tankers, Ltd.* (Sept. 2, 1986) (Corbett, Berg & Nichols, Arbs.), *aff'd*, No. 84 Civ. 5599 (S.D.N.Y. June 2, 1987) (LFM), *aff'd*, 837 F.2d 1086 (2d Cir.1987).

2. Clause 24 of the charter party provides, in part:

   Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York ... pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final....

   Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination.

3. *Trisun Tankers, Ltd. v. Burmah Oil Tankers, Ltd.* (Aug. 29, 1984) (Corbett, Berg & Nichols, Arbs.) (Appendix B to decision of Sept. 2, 1986).

4. *Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.*, No. 84 Civ. 5599 (S.D.N.Y. June 2, 1987) (LFM), *aff'd*, 837 F.2d 1086 (2d Cir.1987).

5. *Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.*, 837 F.2d 1086 (2d Cir.1987).

tion Act authorizes federal courts to stay arbitration proceedings. We conclude, however, that Burmah's petition to stay arbitration falls within the general equity power of the court.[6] Once a judgment has been entered confirming an arbitration award, as here, the award has the same status as any other federal court judgment.[7] A federal court may enjoin state court actions that threaten to relitigate and impair a federal judgment.[8] It would be incongruous if the federal courts could not exercise the same power to protect judgments against later arbitration proceedings. Accordingly, we proceed to consider the merits of Burmah's petition.

It is well settled that the related doctrines of res judicata and collateral estoppel apply to arbitration proceedings.[9] Res judicata bars all claims that were or could have been raised by a party to prior litigation on the same cause of action.[10] Res judicata thereby prevents splitting a cause of action [11] and the attendant waste of judicial resources, increased burdens on litigants, and undermining of finality of judgments that follow from splitting a cause of action.[12] These concerns particularly apply to arbitration which is intended to promote speedy, efficient, and inexpensive resolution of disputes.[13]

The parties do not dispute that the arbitration award was a final decision on the merits and that they were both parties to it. The parties also do not dispute that Trisun's demurrage claim could have been presented to the arbitration panel but was not. The key question for our consideration, then, is whether Trisun's demurrage claim constitutes part of the same cause of action as its claim against Burmah for withheld freight and Burmah's counterclaim for conversion previously resolved by the arbitration panel. If so, then Trisun's attempt to arbitrate demurrage claims separately splits its cause of action and should be stayed.[14]

6. See Aeronaves de Mexico, S.A. v. Triangle Aviation Services, 389 F.Supp. 1388, 1390 (S.D.N.Y. 1974), aff'd, 515 F.2d 504 (2d Cir.1975).

7. E.g., Parsons & Whittemore Alabama Mach. & Services Corp. v. Yeargin Constr. Co., 744 F.2d 1482, 1484 (11th Cir.1984).

8. Anti-Injunction Act, 28 U.S.C. § 2283 (1982). See Mitchum v. Foster, 407 U.S. 225, 236, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972).

9. Maidman v. O'Brien, 473 F.Supp. 25, 29 (S.D. N.Y.1979).

10. Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); Zoriano Sanchez v. Caribbean Carriers, Ltd., 552 F.2d 70, 72 (2d Cir.), cert. denied, 434 U.S. 853, 98 S.Ct. 168, 54 L.Ed.2d 123 (1977); Dalow Industries, Inc. v. Jordache Enterprises, 631 F.Supp. 774, 778 (S.D. N.Y.1985).

11. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); Schattner v. Girard, Inc., 668 F.2d 1366, 1368 (D.C.Cir.1981).

12. See Schmieder v. Hall, 545 F.2d 768, 771 (2d Cir.1976), cert. denied, 430 U.S. 955, 97 S.Ct. 1601, 51 L.Ed.2d 805 (1977); Ritchie v. Landau, 475 F.2d 151, 156 n. 5 (2d Cir.1973).

13. See Schattner v. Girard, Inc., supra, 668 F.2d at 371; Note, The Preclusive Effect of Arbitral Determinations in Subsequent Federal Securities Litigation, 55 Fordham L.Rev. 655, 664 (1987) ("By preventing unnecessary duplicative litigation and promoting speedy yet efficient claim resolution, the doctrine of preclusion is in harmony with the Arbitration Act's goal of promoting efficient dispute resolution." (footnotes omitted)); cf. Liberian Vertex Transports, Inc. v. Associated Bulk Carriers, Ltd., 738 F.2d 85, 87 (2d Cir.1984) (declining to permit interim appeal of district court refusal to confirm partial final award: "such a right would undermine the major purpose of the Federal Arbitration Act, which is 'to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings.'" (quoting in part Diapulse Corp. v. Carba, Ltd., 626 F.2d 1108, 1110 (2d Cir.1980)).

14. See Telephone Workers U. of N.J., Local 827 v. New Jersey Bell Telephone Co., 584 F.2d 31, 33 (3d Cir.1978) (district court should determine whether prior federal judgment decided issue on which party seeks to compel arbitration); Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Cafe, 566 F.2d 861, 863 (2d Cir. 1977) (district court should determine res judicata effect of foreign judgment on petition to compel arbitration); National Shipping & Trading Corp. v. Buck Shipping Int'l Ltd., No. 81 Civ. 3818 (S.D.N.Y. Apr. 3, 1985) (LEXIS, Genfed Library, Dist file) [available on WESTLAW, 1985 WL 495] (courts appropriately consider res judicata arguments on motions to compel or stay arbitration).

The modern test for determining whether causes of action are the same for purposes of res judicata is the "transactional approach" adopted by the Restatement (Second) of Judgments § 24 (1981):

Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claims pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what grouping constitutes a "series," are to be determined pragmatically, giving weight to such considerations as to whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Applying the transactional test convinces us that Trisun's demurrage claim was part of the cause of action resolved by the arbitration panel. Demurrage is payment made by the charterer to the owner of a vessel for delays in loading or unloading the charterer's cargo.[15] The charter party for the M/T TRISUN, which set forth the terms for demurrage payments, is a contract between Trisun and Burmah subject to the rules and requirements of contract law.[16] Interpreting a demurrage clause requires interpretation of the charter as a whole,[17] an exercise that the arbitration panel has already performed. Clearly, the facts are "related in time, space, origin, or motivation," because they arise out of the same document and same transaction previously examined at length by the arbitrators. In contract disputes involving two claims under the same contract, the parties would be required to litigate both claims in the same cause of action.[18] Trisun offers no reason for a different result here.

Further evidencing the relatedness of the facts, the three exceptions to charter liability for demurrage—(1) specific exonerating clauses in the charter party, (2) delay caused by the vessel owner, and (3) delay resulting from a *vis major*[19]—require reconsideration of the transaction as a whole. In resolving Trisun's claim for freight and Burmah's counterclaim for conversion, the arbitration panel examined evidence concerning the vessel's speed and fuel consumption, shifting of cargo in transit, and inaccuracies in Trisun's logs. Undoubtedly, any inquiry into Trisun's demurrage claim would reopen all of these elements of the transaction.

**15.** *Trans–Asiatic Oil Ltd., S.A. v. Apex Oil Co.,* 626 F.Supp. 718, 721 (D.P.R.1985), *aff'd,* 804 F.2d 773 (1st Cir.1986); *National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 627 n. 1 (S.D.N.Y.1978), *aff'd,* 597 F.2d 314 (2d Cir.1979).

**16.** *Great Circle Lines, Ltd., S.A. v. Matheson & Co.,* 681 F.2d 121, 124 (2d Cir.1982); G. Gilmore & C. Black, *The Law of Admiralty* § 4–1, at 195 (2d ed. 1975).

**17.** *See Larsen v. A.C. Carpenter, Inc.,* 620 F.Supp. 1084, 1120–21 (E.D.N.Y.1985), *aff'd,* 800 F.2d 1128 (2d Cir.1986); *Shipping Corp. of India Ltd. v. Sun Oil Co.,* 569 F.Supp. 1248, 1254–58 (E.D.Pa.1983).

**18.** *See Alyeska Pipeline Services Co. v. United States,* 231 Ct.Cl. 540, 688 F.2d 765, 769 (Ct.Cl. 1982) (single nondivisible contract normally gives rise to only one claim), *cert. denied,* 461 U.S. 943, 103 S.Ct. 2120, 77 L.Ed.2d 1301 (1983); *Frankel v. Standard Radio Corp.,* 50 Misc.2d 492, 494, 270 N.Y.S.2d 667, 669 (N.Y.Civ.Ct. 1966) (separate claims under same contract "must be referred to arbitration as one for complete relief in an arbitration award"); *see also Solow v. Avon Products, Inc.,* 56 A.D.2d 785, 786, 392 N.Y.S.2d 618, 620 (1977) ("claims for damages spawned by the same liability on the same contract, and ascertainable at the time an action is commenced, must be demanded, if at all, in that action"), *aff'd,* 44 N.Y.2d 711, 405 N.Y.S.2d 449, 376 N.E.2d 921 (1978); 4 A. Corbin, *Corbin on Contracts* § 955, at 837 (1951) ("it is inconvenient and vexatious to bring more than one action after all the breaches have occurred").

**19.** *See Larsen v. A.C. Carpenter, Inc., supra,* 620 F.Supp. at 1120; *Shipping Corp. of India, Ltd. v. Sun Oil Co., supra,* 569 F.Supp. at 1254; *Dominica Mining Co. v. Port Everglades Towing Co.,* 318 F.Supp. 500, 504 (S.D.Fla.1969).

Finally, other courts have treated demurrage as an intrinsic part of a single transaction,[20] indicating that treatment as a unit forms a convenient trial unit and conforms to business usage. At first blush, this conclusion seems at odds with the dictum in *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*,[21] which states that "judgment on an award does not bar an action or further arbitration under the contract on an issue not before the arbitrators."[22] *Grand Bahama* clearly refused to reach this issue, however, and, when considered in context of all the facts and the authorities cited, the dictum is inapplicable to the facts before us.[23]

■ Accordingly, we conclude that Trisun's demurrage claim should have been raised in the original arbitration proceeding and may not now be raised separately. We apply the transactional approach because we find that a broad definition of "cause of action" comports with the purposes of arbitration and res judicata doctrine. Additionally, the transactional approach is in accord with the standard for compulsory counterclaims set forth in Fed.R.Civ.P. 13(a).[24] Applying the compulsory counterclaim standard to the instant case would bar Trisun's demurrage claim,[25] and we find no basis for a different result under a res judicata analysis.

Although the trend among federal courts has been to adopt the transactional approach to determining the dimensions of a claim, the Second Circuit has not yet done so explicitly.[26] We therefore consider the alternative tests set forth in *Tucker v. Arthur Andersen & Co.*[27] *Tucker* stated that "[w]hether or not the first judgment will have preclusive effect depends on whether a different judgment in the second action would impair rights or interests created by the first judgment, whether the same evidence is necessary to support both claims, and whether the essential facts in

20. *See Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement,* 668 F.Supp. 267, 272–73 (S.D.N.Y.1987); *Diacon–Zadeh v. Devlet Denizyollari,* 127 F.Supp. 446, 448 (E.D. Pa.1954); *see also Amoco Overseas Oil Co. v. Astir Navigation Co.,* 490 F.Supp. 32, 37–38 (S.D. N.Y.1979) (confirming arbitration award that implicitly rejected certain claims).

21. 550 F.2d 1320 (2d Cir.1977).

22. *Id.* at 1324 (quoting 8 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 7514.03 at 75–192 (1976 ed.).

23. The issue "not before the arbitrators" in *Grand Bahama* was a claim for overcharges that arose after the arbitrators had decided the parties' original breach of contract claims. 550 F.2d at 1322–23. Thus, it is clear from the facts of *Grand Bahama* that the Second Circuit was adhering to established res judicata doctrine that contract claims not yet extant are not barred by a judgment on earlier contract claims. *See* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.410[2] at 365 (2d ed. 1983).

This conclusion is buttressed by the authorities cited in *Grand Bahama.* The current volume of New York Civil Practice cites two cases for the quoted proposition, *Matter of Nors Holding Corp.,* 261 A.D. 997, 26 N.Y.S.2d 686 (2d Dept.1941), and *Rembrandt Industries, Inc. v. Hodges Int'l, Inc.,* 38 N.Y.2d 502, 381 N.Y.S.2d 451, 344 N.E.2d 383 (1976). 8 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 7514.03 at 75–312 n. 14 (1988 ed.). The one-paragraph opinion in *Nors* speaks of future defects arising

after the date of the award. 261 A.D. 997, 26 N.Y.S.2d 686. *Rembrandt* is somewhat more complicated. The majority determined that although the complaint asserted a claim for defects that could have been raised as a counterclaim in a previous arbitration concerning payment, the claim could be asserted separately. The majority reasoned that the arbitrators' refusal to hear the counterclaim left it unclear whether any ruling on the merits had been made.

The facts before us present no ambiguity. Trisun knew of the demurrage claim but never presented it to the arbitrators. The claim was extant and the arbitrators did not decline to consider it; it was simply never presented.

24. 1B *Moore's Federal Practice, supra,* ¶ 0.410[1], at 359–61 & nn. 23–26.

25. *See United States v. Aquavella,* 615 F.2d 12, 22–23 (2d Cir.1980) (dismissing action for overpayment which should have been brought as counterclaim to damages action); *Quick Container Services, Inc. v. Interpool, Ltd.,* 115 F.R.D. 59 (S.D.N.Y.1987) (dismissing action for payment which should have been brought as counterclaim in prior action).

26. *See* Annotation, *Proper Test to Determine Identity of Claims for Purposes of Claim Preclusion by Res Judicata under Federal Law,* 82 A.L.R.Fed. 829 § 8 (1987).

27. 646 F.2d 721 (2d Cir.1981).

the second were present in the first." [28] Considering the first test, it is not clear whether a judgment on the demurrage claim would impair any rights or interests created by the award of the arbitration panel. The two remaining tests, however, clearly suggest that preclusion should apply. A second arbitration panel would consider the same evidence as the first panel, particularly the evidence of inaccuracies in Trisun's logs. The same essential facts would be presented both by Trisun's claim and by Burmah's defenses.

We hold, therefore, under either the transactional or the *Tucker* approach, that Trisun may not litigate demurrage separately because it withheld its demurrage claim from consideration by the arbitration panel. We emphasize that our holding is based on the broad scope of the panel's inquiry, specifically, its decision refusing to limit hearings to the issue of freight due and proceeding to consider the transaction and charter party as a whole.

## CONCLUSION

Accordingly, we grant the petition of Burmah Oil Tankers, Ltd. Petitioner is directed to submit on notice, within ten (10) days, a form of judgment permanently enjoining arbitration of respondent's demurrage claim.