SCHLAIFER NANCE & COMPANY, INC., Plaintiff,

v.

The ESTATE OF Andy WARHOL, Defendant.

No. 91 Civ. 1349 (LLS).

United States District Court, S.D. New York.

May 16, 1991.

Paul K. Rooney, New York City, for plaintiff.

Paul J. Hanley, Coblence & Warner and Steven M. Hayes, Parcher & Hayes, New York City, for defendant.

STANTON, District Judge.

The defendant Estate of Andy Warhol (the "Estate") moves for summary judgment dismissing, or in the alternative for an order staying, this contract action

brought against it by Schlaifer Nance & Company, Inc. ("SNC").

The motion is denied. The stay of discovery in this action, in effect since March 6, 1991, is vacated.

## BACKGROUND

In a November 1987 licensing agreement (the "Licensing Agreement") the Estate granted SNC exclusive rights to license Warhol's artwork, trademarks and copyrights (sometimes collectively referred to as "Warhol works") to third parties for use on various products ("Licensed Products").

The Licensing Agreement contains a limited arbitration clause, which requires disputes under some sections of the agreement to be arbitrated, and thus leaves those under other sections to be litigated. Certain rights, duties and representations in the Licensing Agreement, particularly the Estate's duties and representations regarding Warhol works, are set forth both in sections which are subject to arbitration (*see* Licensing Agreement § 13) and in others which are not (*see id.* §§ 2(a), (b), 4(b), 8(a), 9(iv), (vi)).

In February 1990 SNC sued the Estate, *Schlaifer Nance & Co. v. Estate of Warhol,* 742 F.Supp. 165 (*"Warhol I"*), claiming that the Estate had fraudulently induced it into the Licensing Agreement, and had breached the Agreement by false representations, by refusing to approve the sale of Licensed Products, and by permitting other entities to sell Licensed Products, among other things.

The parties are proceeding on some of the *Warhol I* issues before a panel of three arbitrators in Atlanta, Georgia (the "arbitration").

In discovery related to *Warhol I,* the Estate produced to SNC a copy of a September 29, 1989 agreement between the Estate's principal beneficiary, the Andy Warhol Foundation for the Visual Arts, Inc. (the "Foundation"), The Dia Art Foundation and the Carnegie Institute (the "Museum Agreement"). It provided for the establishment of an "Andy Warhol Museum," which has not yet occurred.

SNC claimed to the arbitrators that the Estate violated arbitrable provisions of the Licensing Agreement when, in the Museum Agreement, it granted rights to Warhol works.

Without objection from the Estate, SNC has introduced the Museum Agreement into evidence before the arbitrators, as well as testimony concerning the prospective sale of Licensed Products at the Warhol Museum and whether the Museum Agreement breached the Licensing Agreement. However, the panel has excluded testimony respecting the value of the trademark, "The Andy Warhol Museum" (the "Museum Trademark"), holding that although SNC had asserted damage claims for the Estate's prospective permission for the Museum's sale of Licensed Products, SNC had not in the arbitration claimed that transferring the Museum Trademark breached the Licensing Agreement.

Accordingly, SNC brought this action (*"Warhol II"*), alleging that the Museum Agreement violated its rights under various nonarbitrable provisions of the Licensing Agreement, including "the right to produce or license others to produce Licensed Products and the right to register, own and use the trademark, 'The Andy Warhol Museum.'" (*Warhol II* Complaint ¶ 28). SNC also sues for anticipated future violations of those rights, as well as breach of its right of first refusal under the Licensing Agreement. It further claims that the Estate failed to give it proper notice of transfer to the Foundation of its rights under the Licensing Agreement.

## DISCUSSION

### I. *Summary Judgment*

■ Under Fed.R.Civ.P. 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Purely legal questions, such as the application of claim preclusion rules here,

are properly resolved on motions for summary judgment. *See Flair Broadcasting Corp. v. Powers,* 733 F.Supp. 179, 184 (S.D. N.Y.1990).

## II. Claim Preclusion Resulting From the Arbitration

### 1. General Principles of Claim Preclusion

"Res judicata will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation." *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 639 (2d Cir.), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987).

The parties agree that New York law controls the application of claim preclusion in this diversity action. "It generally has been held that state law controls the application of the doctrines of *res judicata* and collateral estoppel in a diversity action in federal court where the issues involved in the prior judgment required the application of State law." *Freeman v. Marine Midland Bank–New York,* 419 F.Supp. 440, 446 (E.D.N.Y.1976). *See also Norris v. Grosvenor Marketing Ltd.,* 803 F.2d 1281, 1285 (2d Cir.1986) (collateral estoppel in diversity actions determined under state law).

■■■ Under New York's transactional theory, res judicata bars all claims arising out of the same transaction or series of transactions as claims asserted in a prior proceeding, even if the later-asserted claims are based on different theories or seek different remedies. *See O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y. S.2d 687, 688, 429 N.E.2d 1158, 1159 (Ct. App.1981); *Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749 (Ct.App.1981); Restatement (Second) of Judgments § 24 (1982). Res judicata bars claims that could have been asserted in an earlier proceeding but were not, *see Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 276 (S.D.N. Y.1988), and it applies to arbitrations. *In* 

*re Ranni,* 58 N.Y.2d 715, 458 N.Y.S.2d 910, 910–11, 444 N.E.2d 1328, 1328–29 (Ct.App. 1982); *Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.,* 687 F.Supp. 897, 899 (S.D.N.Y.1988).

■■■ Claims arising out of a single contract are generally considered part of the same transaction. *Phoenix Canada Oil Co. v. Texaco Inc.,* 749 F.Supp. 525, 535 (S.D.N.Y.1990); *Burmah,* 687 F.Supp. at 900. *See also Prime Mgt. Co. v. Steinegger,* 904 F.2d 811, 816 (2d Cir.1990).

■■■ Res judicata cannot bar *Warhol II,* since the arbitration has not concluded. However, under the cognate doctrine of "prior action pending," although a prior action has not yet proceeded to judgment, "The court has the inherent power to dismiss or stay this action in favor of the [prior] litigation presenting the same claims and issues." *Continental Time Corp. v. Swiss Credit Bank,* 543 F.Supp. 408, 410 (S.D.N.Y.1982). *See also In re Interstate Stores, Inc.,* 558 F.2d 1046, 1047 (2d Cir.1977) (per curiam) (dismissal proper because prior action will bar instant claim when it is concluded); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1201–04 (2d Cir.1970).

### 2. Claims in the Arbitration and *Warhol II*

In the arbitration, SNC has asserted a claim for lost sales of Licensed Products at an anticipated shop in the Warhol Museum. That claim is arbitrable under section 13 of the Licensing Agreement, in which the Estate agreed not to grant licenses to Warhol works to third parties.

In *Warhol II,* SNC asserts that by the Museum Agreement the Estate transferred its rights in Warhol works and its right to own and use the Museum Trademark. It asserts that this transfer breached a number of nonarbitrable sections of the Licensing Agreement: [1] sections 2(a) and (b) (grant to SNC of an exclusive license and right to grant sublicenses to Warhol works for use in Licensed Products); [2] section 4(b) (Estate's promise not to transfer copyrights to Warhol artwork to third parties

for use in Licensed Products); [3] section 8(a) (Estate's promise to protect all Warhol trademarks and keep them in the Estate's or Warhol's name); [4] section 9(a)(iv) (Estate's warranty that it had and would continue to have the sole and exclusive right to transfer to SNC the rights to Warhol works granted under the agreement); [5] section 9(a)(vi) (Estate's representation that it had not granted and would not grant any right to Warhol works to third parties); [6] section 15 (Estate's grant to SNC of a right of first refusal for transactions involving Licensed Products after the Licensing Agreement expires or terminates); and [7] section 19 (Estate permitted to assign its rights and duties under the Licensing Agreement and rights to Warhol works to the Foundation if the Foundation assumed the Estate's obligations under the agreement and SNC received notice of the assignment).

### 3. Claim Preclusion Applied

█ SNC has asserted claims arising out of the Museum Agreement both in the arbitration and in *Warhol II*. The Estate contends that all those claims arise out of a single contract and are part of a single claim for res judicata purposes. Although in *Warhol II* SNC alleges that the Museum contract violates nonarbitrable provisions of the Licensing Agreement, the Estate argues that SNC could have asserted those claims under an arbitrable section of the Licensing Agreement.

Since the arbitration will proceed to final judgment and SNC could have asserted its *Warhol II* claims there but did not, the Estate's argument runs, those claims are barred.

However, SNC has asserted in *Warhol II* claims under sections of the Licensing Agreement that are not subject to arbitration. While those same claims might have been asserted in the arbitration under another, arbitrable section of that agreement, SNC chose to bring them here, as the agreement gives it a right to do:

> Arbitration is, however, a matter of contract, and the contours of the arbitrator's authority in a given case are deter-

mined by reference to the arbitral agreement. Parties to such an agreement cannot be required to submit to arbitration any matter that they did not agree would be subject to that manner of dispute resolution.... A party who consents to the inclusion in a contract of a limited arbitration clause does not thereby waive his right to a judicial hearing on the merits of a dispute not encompassed within the ambit of the clause.

*Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 165 (D.C.Cir.1981) (citation omitted). *See also Campeau Corp. v. May Dep't Stores Co.*, 723 F.Supp. 224, 227 (S.D.N.Y.1989).

While arbitration "will generally bar claims falling under an arbitration clause even if the claims were not actually raised in the arbitration proceeding, ... arbitration cannot be raised as a bar to claims falling outside the arbitration agreement." *Williams v. E.F. Hutton & Co.*, 753 F.2d 117, 119 (D.C.Cir.1985) (citation omitted). *See also Schattner v. Girard, Inc.*, 668 F.2d 1366, 1368 (D.C.Cir.1981) ("claims will not be barred unless they come within the scope of an arbitration agreement.").

The Estate's claims in *Warhol II* fall outside the parties' agreement to arbitrate since they are asserted as violations of nonarbitrable sections of the Licensing Agreement. Therefore, the arbitration cannot bar them. *See Williams*, 753 F.2d at 119 (issue is not whether claims could have been brought in arbitration, but whether they should have been brought there).

The Estate concedes that the parties consented to claim splitting in their agreement to a limited arbitration clause. It argues that although SNC could have arbitrated or litigated the question whether the Museum Agreement breached the Licensing Agreement, when SNC chose arbitration it was obliged to submit all arbitrable claims regarding the Museum Agreement (as one "transaction") to the arbitrators. That argument, however, gives insufficient regard to the structure of the Licensing Agreement. A single "transaction" might violate various of its section—some arbitrable and

some not—and thus lead to claims in two forums.

There is no principled difference between the right that the Estate acknowledges to split claims and what SNC has done here. In both situations a party asserts claims arising out of one "transaction" in both arbitration and litigation and therefore splits its claim. Since the Licensing Agreement's limited arbitration clause allows such claim splitting, the arbitration will not bar *Warhol II.*

The foregoing analysis has not ignored, but is not altered by, SNC's attempt to present evidence to the arbitrators about the Museum Trademark's value. The offer was excluded upon the Estate's objection, and under the circumstances does not amount to such a waiver or election as would bar SNC's right to litigate the claim.

The Estate argues that SNC's claims regarding transfers of rights to sales of Licensed Products in *Warhol II* are in fact identical to claims asserted before the arbitrators. However, it cannot be decided on the parties' present submissions whether there is any substantive difference between the two claims. In any event, SNC asserts in *Warhol II* other claims arising out of the Museum Agreement, such as claims for the Museum Trademark and violation of its right of first refusal, which are different from those asserted in the arbitration.

## CONCLUSION

The Estate's motion for summary judgment or a stay is denied. The stay of discovery in *Warhol II* is vacated.

So ordered.